IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
Case No.  13-CV-60948- BRANNON

SERGE BRALO,

    Plaintiff,

v.

SPIRIT AIRLINES, INC.,

    Defendant.
_____,

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S <u>MOTION FOR SUMMARY JUDGMENT</u>

Numerous disputes of material fact exist to warrant a denial of the Defendant, SPIRIT AIRLINES, INC.'s ("SPIRIT AIR") Motion for Summary Judgment, and in support, Plaintiff, SERGE BRALO ("BRALO") states as follows:

### <u>UNDISPUTED MATERIAL FACTS</u>

1.     BRALO worked for SPIRIT AIR for over thirteen years. [Depo. Bralo 42:3]

2.     His last held position was an Aircraft Maintenance Supervisor.  DE 9 at ¶ 10.

3.     At all relevant times, Aggie Lang ("Lang") was the sole Benefits and Workers' Compensation Manager. [Depo. Lang 30:17][1]

4.     SPIRIT AIR's policy for notifying employees who contact Lang regarding medical leave is for Lang to direct the employee to the "800" number for Aetna- the then, third party benefits administrator. [Depo. Lang 37:2-10; 46:18-47:1]

5.     BRALO commenced his medical leave under the Family and Medical Leave Act on March 2, 2012. <u>See</u> Exhibit "A" (Employee Absence Summary)

---

[1] Exhibit "R".

6.Aetna sent BRALO a letter dated May 7, 2012, stating, in pertinent part, that his FMLA date of exhaustion was "05/03/2012" and that **"If [he is] unable to return to work on 5/7/12 please contact Spirit Airlines regarding your job status and benefits."** See Exhibit "B" (Aetna 5/7/12 Letter)

7.At the time of his termination, he used 9.20 weeks and had a remaining 2.80 weeks available under the 12 weeks allowed under the FMLA. See Exhibit "A".

8.SPIRIT AIR asserts that "Spirit does not have a light duty program for non-work related injuries." See Exhibit "C" (Memo from Lang to the Unemployment Compensation Commission ("UCC")), Exhibit "D" (Position Statement of SPIRIT AIR), Exhibit "E" (Lang Email dated 5/14/12) and Depo. Lang 90:12-16, 94:19-23, 99:22-100:1.

9.SPIRIT AIR received BRALO's doctor's note dated May 4, 2012, stating that "Serge Bralo is still under my care for herniated L-5 disc c [with] radiculopathy, last seen today and may not return to work until next eval 5/11/12." See Exhibit "F" (5/4/12 Note).

10.SPIRIT AIR received BRALO's doctor's note dated May 14, 2012, stating that "Serge may return to work 5/20/12 @ limited duty; reduce schedule to accommodate physical therapy, lifting limited to 20 lbs. Avoid repetitive bending/stooping." See Exhibit "G" (5/14/12 Note); Depo. Lang 60:19-25.

11.Lang sent an Email to BRALO's supervisors on May 14, 2012, stating, in pertinent part: "I received a note from Serge's doctor releasing him to return to light duty work on 5/20/12 with a reduced schedule and multiple restrictions. Unfortunately **we do not have a light duty program for non-occupation related injuries** or illness therefore he will be unable to return to work until we receive a full duty release with no restrictions." See Exhibit "H" (5/14/12 Email)(emphasis added)

2

12. In response to the 5/14/12 Email, Tommy Andino stated that BRALO "has been out for a long time. When can I get a replacement for him **as it is putting stress on our operation**." See Exhibit "H" (emphasis added) and Exhibit "I" (Communication Record).

13. For **30 days**, following the receipt of the 5/14/12 Note and until June 13, 2012, Lang made no effort to contact BRALO. [Depo. Lang 63:10-13; 75:3-7]

14. On June 13, 2012, Lang sent an email to Tommy Andino and Human Resources stating that BRALO has been out on unauthorized leave of absence since 05/04/12 and continues to do so. Your thoughts?" See Exhibit "J".

15. On June 21, 2012, SPIRIT AIR had a letter dated June 14, 2012, delivered to BRALO, providing a medical questionnaire and a medical record release form which is stated need to be returned by June 22, 2012—the very next date. See Exhibit "K".

16. On June 21, 2012, BRALO's counsel (the undersigned) provided Lang with a letter stating, in pertinent part, requesting that Lang or SPIRIT AIR's counsel contact her to discuss BRALO's job status and stated that BRALO was on medical leave and that he required reasonable accommodations for his work restrictions as set forth in the 5/11/12 Note. See Exhibit "L".

17. On June 25, 2012, Lang left a voicemail for BRALO that he had until June 29, 2012, to respond to SPIRIT AIR. [Depo. Lang 119:7-18]

18. On June 28, 2012, BRALO's counsel sent Lang another letter requesting that she contact her to discuss whether SPIRIT AIR would accommodate BRALO's physical restrictions, in pertinent part. See Exhibit "M".

19. Despite receiving all letters from BRALO's counsel, SPIRIT AIR did not contact BRALO's counsel, as requested. [Depo. Lang 118:8-10]

20. On July 10, 2012, BRALO received the termination letter from SPIRIT AIR dated July 3, 2012. See Exhibit "N".

21. Lang **never** discussed BRALO's limitation in lifting over 20 lbs. and limitations in bending/stooping with anyone at SPIRIT AIR, including BRALO's supervisors. [Depo. Lang 40:21-42:1, 93:5-21]

22. Lang **never** discussed the necessity or frequency that BRALO's duties as a manager supervising a number of individuals required lifting over 20 lbs. and limitations in bending/stooping with anyone at SPIRIT AIR, including BRALO's supervisors. [Depo. Lang 40:21-42:1, 93:5-21]

23. Lang was the person who decided to terminate BRALO. Depo. Lang 9:14-10:11.

## DISPUTES OF MATERIAL FACT[2]

1. BRALO's duties involved little to no lifting of weight of over 20 lbs. [Depo. Bralo 46:9-21, 70:1-71:7]

2. On April 30, 2012, BRALO provided Lang with a status from medical provider that he was under her "care for herniated lumbosacral discs with radiculopathy from 3/2/12. See Exhibit "O"

3. On April 2, 19 and 30, 2012 and May 1, 2012, BRALO contacted Lang. See Exhibits "N" and "O" (April and May Phone Logs); Depo. Bralo 24:10-15.

4. On April 30, 2012, on the same date BRALO faxed Lang his medical provider's note, he spoke with Lang for nine minutes. See Exhibit "P" and Depo Lang 59:4-7.

---

[2] Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997)(facts are material if it may affect the outcome of a suit under governing law).

5. On May 4, 2012, BRALO spoke with Lang and advised her that he was still undergoing medical treatment and that his next appointment was May 11, 2012. [Depo. Bralo 24:5-15, 163:3-8]

6. On May 7, 2012, BRALO re-faxed the 5/4/12 Note and called Lang twice. See Exhibit "Q".

7. BRALO spoke with Lang as follows: May 10, 2012 (five minutes); May 15, 2012 (two min.); May 16, 2012 (seven min.). See Exhibit "R"; Depo. Bralo 45:10-20.

8. Lang told BRALO that SPIRIT air would not accommodate his restrictions. [Depo. Bralo 41:14-42:9, 44:14-22, 174:-7]

9. Lang told BRALO that he would be better served if he went back to his medical provider and tell them to lift his physical restrictions. [Depo. Bralo 41:20-42:3, 46:16-22]

10. Lang told BRALO to contact his supervisor to find out his job status. [Depo. Bralo 174:1-7, 178:19-21]

11. BRALO called his then-supervisor Rob Coriveau on May 16, 2012 and May 18, 2012, and left messages about his return to work date and his job status. [Depo. Bralo 178:14-18]

12. Coriveau never called BRALO. [Depo. Bralo 178:14-18]

## MEMORANDUM OF LAW

### A. A Jury Should Decide BRALO's FMLA Interference (Count I) and Retaliation Claims (Count II) Claims.

The FMLA grants eligible employees to take up to 12 workweeks of unpaid leave annually if a serious health condition makes that employee unable to perform their job functions.[3] The FMLA provides for a private right of action against employers who "interfere with, restrain, or

---

[3] Hurlburt v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1293 (11th Cir. 2006); 29 USCS § 2612(a)(1)(D).

deny the exercise of or attempt to exercise" rights under the FMLA.[4]  This Circuit notes that "[t]he legislative history of the provision of the FMLA providing leave for sick employees states that 'it is unfair for an employee to be terminated when he or she is struck with a serious illness and not capable of working.'"[5]  Thus, Congress' intent was to provide employees with a "minimum entitlement of 12 weeks of leave."[6]

>  1. **The jury should determine whether SPIRIT AIR took actions that interfered with, restrained or denied the exercise or the attempt of BRALO to exercise his FMLA rights.**

In order to establish an FMLA interference claim, "an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied." [7]  In order to hold an employer liable under the FMLA for interference, the employee "does not need to allege that his employer intended to deny the benefit", since "the employer's motives are irrelevant" to such a claim. [8]

>  a. **SPIRIT AIR denied and/or interfered with BRALO's FMLA rights, since it ignored his requests to return to work after he provided notice of the need for FMLA leave and ultimately fired him for the absences caused by the serious health condition.**

It is undisputed that BRALO was an eligible employee entitled to take 12 workweeks of medical leave under the FMLA.[9]

Here, BRALO was on approved FMLA leave, since March 2, 2012.[10]  While his scheduled return to work date was on or about May 4, 2012, he had to take additional time to

---

[4] Id.
[5] Strickland v. Water Works and Sewer Bd. of the City of Birmingham, 239 F.3d 1199, n.7 (11th Cir. 2001), quoting, S.Rep. No. 103-3 (1993).
[6] Id. at 1206.
[7] Strickland, 239 F.3d at 1207; Hurlburt, 439 F.3d at 1293;
[8] Hurlburt, 439 F.3d at 1293, citing Strickland, 239 F.3d at 1208.
[9] Exhibit "A".
[10] Exhibit A.

care for his serious health condition.[11]  As soon as he was aware of the need for additional leave, he immediately notified Lang.[12]  Indeed, he testifies that he called and had multiple conversations with Lang wherein he advised her about his continued treatment of his disc herniation and that his medical provider needed to conduct follow-up examinations on him before he could return to work.[13]  Lang denies that BRALO had any conversations with her about his medical condition.[14]  Without dispute though, Lang concedes (at least in her May 14, 2012 email) that she received notification that BRALO could return to work on May 20, 2012, but with restrictions.[15]  The 5/14/12 Note indicates that BRALO would need to attend physical therapy appointments intermittently.[16]

"Where an employee's need for FMLA leave due to a serious medical condition is unforeseeable the advance notice requirement does not apply."[17]  All that employee is required to do is to provide the "employer with notice sufficient to make the employer aware that [his] absence is due to a potentially FMLA-qualifying reason."[18]  There is no requirement that the employee asserts the "FMLA" or even mention that FMLA—all that is required is that "leave is needed."[19]

Once an employee informs the employer that a potentially qualifying FMLA leave is needed, the employer then has "the burden of ascertaining whether the employee's absence

---

[11] Depo. Bralo 24:5-15, 163:3-8; Exhibits "F" and G
[12] Depo. Bralo 24:5-15, 163:3-8; Exhibits "F" and G
[13] Depo. Bralo 24:5-15, 163:3-8, 45:10-20
[14] Depo. Lang 58:22-25.
[15] Exhibit "G".
[16] Exhibit "G"; 29 USCS §2612(b)(FMLA provides for intermittent leave).
[17] Strickland, 239 F.3d at 1208.
[18] Id., quoting Gay v. Gilman Paper Co., 125 F.3d 1432, 1436 (11th Cir. 1997).
[19] Id., quoting 29 CFR §825.303(b).

actually qualifies for FMLA protection."[20]  The employer is then **"expected to obtain additional required information through informal means."**[21]

SPIRIT AIR denies that BRALO informed Lang that he required additional medical leave.  But, the undisputed fact that Lang: (a) received the 5/4/2012 Note; (b) received the 5/14/12 Note; and (c) commented about the 5/14/12 Note in her email to BRALO's direct reports that acknowledged that BRALO could return to work on May 20, 2012, needed accommodations for his lifting, bending and stooping restrictions, and that SPIRIT AIR had no accommodations for non-work related injuries, "should have alerted [SPIRIT AIR] that it needed to conduct further investigation into whether [BRALO] was eligible for FMLA leave."[22]  Further, without conceding that SPIRIT AIR can punt its FMLA obligations to a third-party (here, Aetna), at no point in time following BRALO's presentation of the 5/4/12 Note, did Lang refer BRALO back to Aetna to attempt to avail himself of FMLA benefits.[23]  The record demonstrates that SPIRIT AIR waited over 30 days to contact BRALO regarding any medical leave and terminated him shortly thereafter, stating, in part that it was due to "unsubstantiated" absences from May 4, 2012 to May 20, 2012.[24]

On the other hand, BRALO testified that he had numerous conversations with Lang between May 4, 2012 to May 14, 2012 (as testified to by BRALO and as evidenced by his cell phone records--- but denied by Lang), provided Lang with his doctor's notes, confirmed that Lang received his doctor's notes by fax (which she denies), was told by Lang that he could not return to work until he was fully released from his medical provider <u>without restrictions</u>, and that he should call his supervisor to find out his "job status".

---

[20] Id. at 1209, citing 29 CFR § 825.303.
[21] Id.; Cruz v. Publix Super Mkts., Inc., 428 F.3d 1379, 1383 (11th Cir. 2005).
[22] Id. at *16.
[23] Depo. Lang 119:2-6.
[24] Exhibit "N".

8

Thus, in the light most favorable to BRALO, there is a genuine issue of material fact as to whether SPIRIT AIR was placed on notice that BRALO required FMLA qualifying leave.[25] And, the jury needs to weigh the credibility of the testimony and determine whether SPIRIT AIR interfered with, restrained or denied BRALO's exercise or attempt to exercise his FMLA rights. A jury could choose to accept BRALO's version of the facts or Lang's version, either one would be determinative. Accordingly, this Court should deny the Motion for Summary Judgment as to Count I.

### 2. The Jury should decide whether SPIRIT AIR's basis for firing BRALO was due to his exercise or attempted exercise of his FMLA rights.

Taking or requiring leave for a serious health condition constitutes protected FMLA activity.[26] To prove FMLA retaliation, BRALO must show that SPIRIT AIR "intentionally discriminated against him for exercising an FMLA right."[27] BRALO can demonstrate FMLA retaliation by either (a) direct evidence of retaliation or (b) through application of the burden-shifting framework established under McDonnell Douglas Corp. v. Green.[28]

### i. The jury should determine whether Lang's refusal to allow BRALO to return to work and termination due to absences due to a serious health condition constitute direct evidence of FMLA-Retaliation.

If the jury chooses to accept BRALO's version of the facts, it could very well determine that Lang knew that BRALO engaged in FMLA protected activity when he sought a later return date and provided her with his medical provider's notes. Further, the jury could believe that BRALO was retaliated against by attempting to avail himself of FMLA benefits, since he was not permitted to return to work, not permitted to take intermittent leave to attend to his physical

---

[25] Wai v. Federal Express Corp., 2012 US App LEXIS 4219 (11th Cir. 2012)(affirmed jury verdict on FMLA claim and held that employer was placed on notice that employee required FMLA leave).
[26] Bozarth v. Sunshine Chevrolet-Oldsmobile of Tarpon Springs, Inc., 2010 US Dist. LEXIS 25881, *11 (MD Fla. 2010)("Statutorily protected activity includes taking or requesting to take leave for which the employee is eligible under the FMLA"), citing Morehardt v. Spirit Airlines, Inc., 174 F. Supp.2d 1272, 1281 (MD Fla. 2001).
[27] Martin v. Brevard Co. Publ. Sch., 2008 US App. LEXIS 20580 (11th Cir. 2008).
[28] Id. at *14.

therapy had he been allowed to return to work and ultimately fired for his "unsubstantiated" absences.[29]

### b. The jury should weight the circumstantial and conflicting evidence to determine whether SPIRIT AIR retaliated against BRALO for exercising or attempting to exercise his FMLA rights.

Under the burden-shifting analysis, to make a *prima facie* case "an employee claiming FMLA retaliation must show that (1) he engaged in statutorily protected activity, (s) he suffered an adverse employment decision, and (3) the decision was causally related to the protected activity."[30] Then, the burden shifts to the employer to "articulate a legitimate reason for the adverse action."[31]  Finally, if the employer does so, the employee must demonstrate that the articulated reason is pretextual.[32]

It is undisputed that Lang was the decision maker and knew that BRALO informed her that he could return to work on May 20, 2012, with restrictions.[33]  It is further undisputed that Lang fired BRALO, in part, because of his unsubstantiated absences—which were, incidentally, substantiated by the 5/4/12 Note and 5/14/12 Note that Lang received.  Thus, a jury could find that BRALO set forth a *prima facie* case of retaliation.

SPIRIT AIR's articulated reason for its termination of BRALO is two-fold: (1) he did not substantiate his absences from May 4, 2012 to May 20, 2012 and (2) he did not provide SPIRIT AIR with a completed fitness for duty questionnaire.[34]

Pretext can be proved: "(1) by showing that the legitimate nondiscriminatory reasons should not be believed; or (2) by showing that, in light of all the evidence, discriminatory reasons more

---

[29] Carter v. City of Miami, 870 F.2d 578, 581-582 (11th Cir. 1989)(" Direct evidence of discrimination would be evidence which, if believed, would  prove the existence of a fact without inference or presumption."), citing, Castle v. Sangamo Weston, Inc., 837 F.2d 1550, 1558 n. 13 (11th Cir.1988).
[30] Martin, 2008 US App. LEXIS at *14.
[31] Hurlbert, 439 F.3d at 1297.
[32] Id. at 1298.
[33] Depo. Lang 9:14-10:11.
[34] Exhibit "N".

likely motivated the decision than the proffered reason."[35] All BRALO needs "to do is cast doubt on the proffered reason to such a degree that a reasonable fact finder could conclude that the legitimate reason did not precede the employer's decision.[36]

There is a genuine issue of fact so as "to allow a reasonable finder of fact to conclude that [SPIRIT AIR's] articulated reasons for its decision should not be believed, [and] it is not necessary for [BRALO] to prove that the articulated reason for the adverse employment action is false."[37] In determining pretext, the fact finder should determine the credibility of the following actions (or inactions) by SPIRIT AIR: (a) the refusal to permit BRALO to return to work; (b) telling BRALO he should have his restrictions fully lifted; (c) waiting over 30 days to contact BRALO about his job status; (d) never providing BRALO with FMLA leave continuation information[38]; (e) firing BRALO within close temporal proximity of his taking or attempt to take FMLA leave;[39] (g) allowing other employees to take FMLA leave longer than 12 weeks[40]; (h) never contacting BRALO's counsel as requested in three letters[41]; (i) Lang's assertion that she cannot recall speaking to BRALO for the month of May and June[42]; and (j) Lang's assertion that she terminated BRALO for "Job abandonment."[43]

While "it is not the court's role to second-guess the wisdom of an employer's decision' it is also not the Court's role to make credibility determinations or to assess conflicting evidence at

---

[35] Harley, 487 F. Supp.2d at 1353.
[36] Id., citing Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997).
[37] Bozarth, 2010 US Dist. LEXIS *26.
[38] Harley v. The Health Ctr. of Coconut Creek, Inc., 487 F.Supp.2d 1344 (SD Fla. 2006)(summary judgment denied on FMLA retaliation claim since proof that employer failed to follow established policies is evidence of pretext).
[39] Bozarth, 2010 US Dist. LEXIS 25881 *18 ("causal connection can be shown by temporal proximity"); Worst v. Glynn Co. Sch. Dist., 2012 US Dist. LEXIS 2012 (SD Ga. 2012)(ultimate reason for adverse job actions in FMLA retaliation claim a jury question).
[40] Depo. Lang 45:1-22.
[41] Depo. Lang 118:8-10.
[42] Depo. Lang dated Nov. 8, 2013 attached as Exhibit "Q; Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1195-6 (11th Cir.)("**Dishonesty can be 'affirmative evidence of guilt'**").
[43] Depo. Lang 1 47:15-22.

the summary judgment stage."[44]  Therefore, this Court should allow the jury to determine whether SPIRIT AIR retaliated against BRALO under the FMLA and deny the Motion for Summary Judgment as to Count II.

### B. The Jury Should Determine Whether SPIRIT AIR Failed to Reasonably Accommodate BRALO's Specified Physical Restrictions.

#### a. Failure to accommodate claims are analyzed by application of the traditional burdens of proof and <u>not</u> under the burden-shifting framework.

Under the ADA and Florida Civil Rights Act of 1992 ("FCRA"), "discrimination includes the failure to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual."[45]  To prevail under a failure to accommodate claim, BRALO must demonstrate that he had a disability, was qualified to perform his management duties and SPIRIT AIR failed to accommodate him.[46]  The McDonnell Douglas framework "is inapplicable in failure to accommodate cases under the ADA".[47]  Thus, in failure to accommodate cases, there is no "subsequent **burdens** on [defendant] to show that it had any legitimate non-discriminatory reasons for terminating [plaintiff] or on [plaintiff] to establish that these reasons were pretextual".[48]  Thus, an employee who proves a *prima facie* case of disability discrimination proves a reasonable accommodation claim.[49]

"Under either a failure to accommodate theory or a disparate treatment theory, a plaintiff establishes a *prima facie* case of discrimination under the ADA by showing that: "(1) he has a

---

[44] Muzyka v. Regions Bank, 2012 US Dist. LEXIS 8617 (MD Fla. 2012), citing Alexander v. Fulton Cty., Ga., 207 F.3d 1303, 1341 (11th Cir. 2000).
[45] EEOC v. Eckerd Corp., 2012 US Dist. LEXIS 91370 *11 (ND Ga. 2012), citing, Lucas v. W.W. Grainger, Inc., 257 F.3d 12498, 1255 (11th Cir. 2001)(ADA accommodation claim).
[46] Eckerd Corp., 2012 US Dist. LEXIS at *13; Faison v. Vance-Cooks, 2012 US Dist. LEXIS 145156 (D. DC  2012)(summary judgment denied on ADA accommodation claim).
[47] Nadler v. Harvey, 2007 US App. 20272 (11th Cir. 2007)(held that McDonnell Douglas burden-shifting not applicable to reasonable accommodation cases).
[48] Holly v. Clairson Indus., L.L.C., 492 F.3d 1247, 1262 (11th Cir. 2007).
[49] Haines v. Cherokee Co., 2010 US Dist. LEXIS 71544 *30 (ND Ga. 2010).

disability; (2) he is a 'qualified individual;' and (3) the defendant unlawfully discriminated against him because of the disability."[50]

SPIRIT AIR can avoid liability under the accommodation claim if it can demonstrate that the accommodation requested would pose an undue hardship.[51]

### b. The jury should determine whether BRALO could perform his essential job functions with a reasonable accommodation that limited his lifting to no more than 20 lbs and to limit his bending/stooping.

A dispute of material fact exists as to whether BRALO was a qualified individual with a disability. SPIRIT AIR argues disingenuously that BRALO could not perform his essential job functions and that he did not request an accommodation.[52]

With respect to the latter argument, BRALO did indeed request physical accommodations that his lifting be limited to less than 20 lbs and that he had to avoid stooping and bending.[53] This request for an accommodation was "sufficiently direct and specific" to give rise to SPIRIT AIR's duty to provide a reasonable accommodation.[54] Whether these requests for accommodations were clear and specific should be a question for the jury to decide.

Similarly, whether BRALO could perform his essential job functions with the two accommodations of: (1) lifting less than 20 lbs and (2) limit bending/stooping is a question for the jury. BRALO testified that he had limited physical job requirements with regard to lifting.[55] With respect to bending/stooping, BRALO testified that he could perform such activities but had to limit them.[56] And, contrary to the assertions of SPIRIT AIR, BRALO never requested that he not climb ladders. Further, other than pulling out the job description for the Maintenance

---

[50] Id.
[51] Id.;
[52] DE 38, p.4.
[53] Exhibit "G".
[54] Gaston v. Bellingrath Gardens & Home, Inc., 167 F.3d 1361, 1363 (11th Cir. 1999); Calero-Cerezo v. US Dep't of Justice, 355 F.3d 6, 23 (1st Cir. 2004); see also Exhibits "G and F"
[55] Depo. Bralo 174:1-7.
[56] Depo. Bralo 174:1-7; Exhibit "G, S and M"

Manager, Lang did not inquire about the essential job requirements from any of BRALO's supervisors, co-workers or any SPIRIT AIR employee, nor did she have any discussion with BRALO about his essential job functions.[57]  To determine whether a job duty is "essential" must be "evaluated on a case-by-case basis and the courts may consider the following factors in determining whether a duty is essential: (1) the employer's judgment as to which functions are essential; (2) the written job description; (3) the amount of time spent on the job performing that function; and (4) the consequences of the employee not doing that function."[58]  Thus, the jury needs to determine whether: (1) lifting more than 20 lbs, bending and stooping were essential job functions and (2) BRALO could perform his essential job functions.

> **c. The Jury should determine whether Lang's delay in communicating with BRALO about his request for job accommodation, her disregard of efforts by BRALO's counsel to discuss the job accommodations, statement that SPIRIT AIR would not accommodate BRALO and that BRALO should have his doctor lift the restrictions constitute the interactive process envisioned by the ADA/FCRA and, if so, whether SPIRIT AIR's actions caused the breakdown of Interactive Process.**

The accommodation requirements of the ADA requires at the very least for an "employer [to] be willing to consider making changes in its ordinary work rules . . . in order to enable a disabled individual to work."[59]  Here, if BRALO's testimony is given credence by the jury, Lang told him that: (1) he should get his doctor to lift all of his restrictions and (2) SPIRIT AIR only accommodated employees who had workers' compensation injuries.[60]

Once BRALO made SPIRIT AIR aware that he required job accommodations, it "must make a reasonable effort to determine the appropriate accommodation.  The appropriate

---

[57] Depo. Lang 40:21-42:1, 93:5-21.
[58] Muzyka, 2012 US Dist. LEXIS 8617 *16, citing, Cremeens v. City of Montgomery, Ala., 427 Fed. App'x 855, 857 (11th Cir. 2011).
[59] Faison, 2012 US Dist. LEXIS 145156 at *56; US Airways, Inc. v. Barnett, 535 US 391, 397 (2002)("By definition, any special 'accommodation' requires the employer to treat an employee with a disability differently i.e., preferentially").
[60] Depo. Bralo 41:14-42:9, 44:14-22, 174:-7, Exhibits "C,D &E".

accommodation is best determined through a flexible, interactive process that involves both the employer and the [employee] with a disability."[61] Thus, as soon as BRALO requested an accommodation, SPIRIT AIR's duty was to act in "good faith, . . . and the absence of good faith, including unreasonable delays caused by an employer, can serve as evidence of an ADA violation."[62] In this case, BRALO testified that once he advised Lang about his physical restrictions, she stated that they would not be accommodated and that he needed get them lifted.[63] Essentially, SPIRIT AIR's position was that it did not need to accommodate BRALO's restrictions since he did not suffer an on-the-job injury.[64] In the Faison case, this argument by the employer that it was not required to accommodate failed and the court denied the employer's motion for summary judgment.[65]

Further, the jury should determine whether the actions taken by Lang amounted to engaging in the interactive process when she claims she did not speak with BRALO for the entire month of May and June of 2012—contrary to BRALO's testimony and supporting cell phone records. Additionally, whether Lang engaged in the interactive process is a jury question with respect to her actively ignoring the letters provided by the undersigned requesting that BRALO be accommodated. Finally, whether Lang's letter to BRALO over 45 days after he was to return to work constituted an unreasonable delay, is a question for the jury.[66] So too is the arbitrary and rushed deadlines for BRALO to submit information; especially since the jury could infer that SPIRIT AIR was attempting to manufacture a legitimate reason to deny him accommodations

---

[61] 29 CFR § 1630.2(o)(3).
[62] Pantazes v. Jackson, 366 F. Supp.2d 57, 70 (D. DC 2005)(jury could conclude that the employer frustrated the employees efforts to secure a reasonable accommodation).
[63] Exhibit "E".
[64] Depo. Lang and Exhibits "C,D & E".
[65] Faison, 2012 US Dist. LEXIS 145156 *44.
[66] Nieves v. Popular, Inc., 2013 US Dist. LEXIS 166717 *10 (D PR 2013)("Under the ADA, an employer's unreasonable delay in providing reasonable accommodation to disabled employee may constitute a failure to provide such accommodations.")

and to fire him.[67]  Therefore, this Court should deny SPIRIT AIR's Motion as to Counts III and IV.

    **C. Curiously, SPIRIT AIR has Raised Issues on Claims Not Raised in the Complaint—namely Retaliation under the FCRA and ADA.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 19th day of December 2013, that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

        By:    */s/ Gina Cadogan*
               GINA MARIE CADOGAN
               Fla. Bar. 177350
               CADOGAN LAW
               300 S. Pine Island Road, Suite 107
               Plantation, FL 33324
               Tel: 954.606.5891

## SERVICE LIST
*Bralo v. Spirit Airlines, Inc.* Case No. 13-CV-60948- BRANNON

Kelly H. Kolb, Esquire
Florida Bar Number: 0343330
kelly.kolb@fowlerwhite.com
**FOWLER WHITE BOGGS P.A.**
1200 East Las Olas Boulevard, Suite 500
Fort Lauderdale, Florida 33301
Telephone: (954) 703-3900
Facsimile: (954) 703-4558
*[CM/ECF]*

---

[67] Cleveland, 369 F.3d at 1196(jury could infer evidence of dissembling by employer).